## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-1780 |
| | ) | |
| v. | ) | The Honorable Arthur J. Schwab |
| | ) | Senior United States District Judge |
| "flux" | ) | |
| a/k/a "ffhost", | ) | |
| | ) | |
| and | ) | |
| | ) | |
| "flux2" | ) | |
| a/k/a "ffhost2", | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF SPECIAL AGENT BRIAN STEVENS
## IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

I, Brian Stevens, declare as follows:

1. I am a Special Agent with the Federal Bureau of Investigation in Pittsburgh, Pennsylvania. I make this declaration in support of the United States of America's Motion for Permanent Injunction. I make this declaration of my own personal knowledge or on information and belief where noted and, if called as a witness, I could and would testify completely to the truth of the matters set forth herein.

2. I have been a Special Agent with the Federal Bureau of Investigation (FBI) for over four years. I am currently assigned to the Pittsburgh Division Cyber Intrusion Squad. I have been trained in investigative tools and techniques required to pursue criminals employing sophisticated online tools such as malware, botnets, and Virtual Private Servers (VPS). I have also received training and gained experience in interviewing and interrogation techniques, the

execution of federal search and seizure warrants, and the identification and collection of computer-related evidence. Since 2015, I have been the primary FBI case agent on this matter.

3. I incorporate as if more fully declared herein the prior Declarations of Special Agent Aaron O. Francis in support of the application of the United States for the Temporary Restraining Order (TRO) and the Preliminary Injunction (PI) in the above captioned matter, *See* Dkt. No. 3, Attch. 1 and No. 15, Attch. 4, the prior Declaration of Special Agent Samantha Shelnick in Support of the Motion to Continue the Preliminary Injunction, *See* Dkt. No. 26, Attch. 1, and the prior Declaration of Special Agent Brian Stevens in Support of Motion to Continue Preliminary Injunction, *See*, Dkt. No. 29, Attach. 1.

## TAKEDOWN OF THE AVALANCHE INFRASTRUCTURE

4. Based upon this Honorable Court's authorization in the Temporary Restraining Order, U.S. Law Enforcement assisted German Law Enforcement in the successful takedown of the Avalanche Infrastructure on November 30, 2016. As more fully described in Special Agent Francis' prior declaration, the operation included the use of traditional disruption techniques, such as seizing key servers and domain names thereby taking them offline. U.S. Domain Registries redirected registered U.S. domains thereby substituting servers by either transferring the domains to the Registry of Last Resort (RoLR) or redirecting the domains to resolve to the substitute servers. RoLR, through the ShadowServer Foundation, redirected all of these domains to the substitute servers.

5. Law enforcement efforts to disrupt the Avalanche Infrastructure were very successful. Within a week of the takedown of the Avalanche Infrastructure, over 100,000 unique IP addresses reported to the substitute servers controlled by law enforcement. Since the

day of the takedown, up until November 9, 2017, 2,094,018 unique IP addresses in the United States and 21,620,537 unique IP addresses internationally reported to the substitute servers controlled by law enforcement. Millions of computers also checked into the sinkhole in 2018, requiring an extension of the Temporary Restraining Order.

6. Since this Court signed the last Order on November 30, 2018, millions of computers have consistently checked in to the sinkhole. For example, on November 12, 2019, 1,121,896 unique IP addresses checked in to the sinkhole; 19,420 of these IP addresses originated from the United States. This data demonstrates that the sinkhole continues to prevent hundreds of thousands of victim computers from being recaptured and controlled by criminal actors, including many thousands of computers in the United States.

7. As a part of the takedown effort on November 30, 2016, the FBI assisted the Ukrainian police in arresting Gennady Kapkanov. Gennady Kapkanov is a 35 year-old Ukrainian citizen from Poltava, Ukraine believed to have been an administrator for the Avalanche Infrastructure who used the online monikers "flux" and "ffhost." Ukrainian law enforcement officials arrested Kapkanov in Poltava, Ukraine on a German warrant for cybercrime offenses. As police prepared to raid Kapkanov's residence to effect his arrest, Kapkanov shot at officers with a Kalashnikov assault rifle through his armored front door. Kapkanov then attempted to escape police via his fourth floor apartment balcony prior to being arrested. Kapkanov was subsequently released by a Ukrainian judicial official despite the pendency of charges in Ukraine and Germany. Kapkanov fled and was rearrested by Ukrainian police in February 2018. He is presently incarcerated. Stemming from his role in operating the

Avalanche hosting service, Kapkanov was indicted by a Grand Jury sitting in the Western District of Pennsylvania on April 17, 2019. *See* Crim. A. No. 19-104 (W.D. Pa.).

## MAINTAINING THE DISRUPTION OF AVALANCHE AND THE FAMILIES OF MALWARE THAT UTILIZED THE INFRASTRUCTURE

8. As a result of the preliminary injunction granted by this Honorable Court, there are hundreds of thousands of unique IP addresses daily reporting to substitute servers that are currently controlled by law enforcement. If the registration of these domains is not extended so that they may continue to report to substitute servers controlled by law enforcement, the criminal actors could regain control of the domains and resume criminal activity.

9. Tens of thousands of new domains were generated since the November 30, 2016 takedown of the Avalanche Infrastructure to the present. If communications from the infected victim computers are not blocked or redirected to the substitute servers controlled by law enforcement, the criminal actors could regain control of the domains and resume criminal activity.

10. However, indefinite extensions of the preliminary injunction on a yearly basis are not feasible. Therefore, the Government is requesting that one additional year of Avalanche-generated domains be included within the scope of this Permanent Injunction.

11. U.S. Law Enforcement will continue to assist German Law Enforcement with the disruption of the Avalanche Infrastructure. Our assistance will continue to prevent the criminals from utilizing the Avalanche Infrastructure to victimize residents of the Western District of Pennsylvania and throughout the United States. Additionally, the FBI will work with domain registries, the Internet Corporation for Assigned Names and Numbers (ICANN) and other organizations to ensure that relevant organizations are provided lists of malicious domains that

will be generated by Avalanche beyond November 30, 2020, when the final list of domains included in the Permanent Injunction are ready to expire.  For the extension of domains currently reporting to substitute servers controlled by law enforcement as well as for new domains generated since last year's continuation of the sinkhole, a review of the technical disruption effort and subsequent remediation campaign is detailed below.

## DOMAINS TO BE CONTINUED OR OTHERWISE ACTIONED

12. To prevent the malware actors from regaining control of these domains and using them to further their criminal conduct, a subset of currently registered domains listed in Appendices P and Q need to be redirected to the substitute servers controlled by law enforcement, as described in the Government's proposed order.

13. Additionally, Appendix R, attached hereto, contains unregistered domains that need to be rendered unresolvable, or blocked from being registered, as described in the Government's proposed order.

14. Additionally, Appendix S, attached hereto, contains unregistered domains that need to be redirected to the substitute servers controlled by law enforcement, as described in the Government's proposed order.

15. Finally, the FBI has identified domain names that are no longer at risk of being used to commit criminal acts by defendants, and therefore, need to be released from restriction or other limitation, as described in the Government's proposed order.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 26th day of November, 2019, in Pittsburgh, Pennsylvania.

_____
Brian Stevens
Special Agent
Federal Bureau of Investigation